## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**FREDERICK E. PARAHAM,**

      **Plaintiff,**

      **v.**                                             **Case No. 16-2539**

**ATRIUMS MANAGEMENT COMPANY, INC.
and TUTERA SENIOR LIVING AND
HEALTH CARE, LLC,**

      **Defendants.**

### MEMORANDUM & ORDER

Plaintiff Frederick E. Paraham opposes defendants Atriums Management Company, Inc. ("Atriums") and Tutera Senior Living and Health Care, LLC ("Tutera")'s Motion for Summary Judgment (Doc. 37) on plaintiff's disparate treatment; failure to accommodate; and retaliation claims brought pursuant to the American's with Disabilities Act ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. §§ 12101–12213. For the reasons explained below defendants' motion for summary judgment is denied.

Also before the court is plaintiff Frederick E. Paraham's Motion for Leave to File Surreply (Doc. 46). Plaintiff seeks to file a surreply to supplement his summary judgment briefing. Generally, surreplies are not contemplated by the local or federal rules. However, they are sometimes allowed by the court's leave under rare circumstances, such as when new arguments or materials are raised in a reply. Liberally construing the parties' arguments, the court grants the motion to file a surreply.

### I.     Uncontroverted Facts

If not otherwise noted, the following facts are either uncontroverted or, for the purposes of this motion, are viewed in the light most favorable to plaintiff.

### A.    Plaintiff's Relevant Pre-Atriums Employment History

Plaintiff worked as a mover for 21 years.  He injured his back in 2001 but continued to work as a mover until 2009.  Plaintiff's expert witness disclosures suggest that plaintiff's non-retained expert Dr. Kristen N. Michael will testify about plaintiff's right shoulder pain and chronic lower back pain that she treated in 2015, and diagnosed as right shoulder joint pain, osteoarthritis of the acromioclavicular ("AC") joint, osteoarthritis of the glenohumeral joint, mild degenerative disc disease, and chronic lower back pain.  (Doc. 24.)  Plaintiff's non-retained expert Dr. Suhas J. Samuel will also testify about his treatment of plaintiff's right shoulder pain in 2015.  Non-retained experts Dr. Akin Cil and Dr. James Barnes will testify about their treatment, including surgery, of plaintiff's shoulder in 2015, as well as their diagnosis of plaintiff's shoulder condition.  All of plaintiff's alleged disabilities predate his employment with Atriums.

### B.    Plaintiff's Employment with Atriums

Defendant Atriums hired plaintiff on September 1, 2011 to work as a maintenance assistant. The parties dispute whether defendant Tutera also employed plaintiff.  Plaintiff worked with a maintenance supervisor, Joe Hernandez, and three other maintenance assistants.  Mr. Hernandez was plaintiff's direct supervisor and Lucille Tutera, the Atriums' administrator, also had authority over plaintiff's work.

Plaintiff was an at-will employee and signed a written job description on the day he was hired. The Maintenance Assistant Job Descriptions states: "The primary purpose of your job position is to maintain the grounds, facility, equipment in a safe and efficient manner . . . ."  (Doc. 38-1, at 41.)  A table listing job duties and responsibilities, equipment and supply functions, says the maintenance assistant will also: "assist others in lifting heavy equipment, supplies, etc., as directed or requested." (*Id.*, at 43.)  The same table, under the safety and sanitation header, requires maintenance assistants to

"wear and/or use safety equipment and supplies (e.g., back brace, mechanical lifts, etc.) when lifting or moving heavy objects."  (*Id.*, at 42.)  A table lists job "physical and sensory requirements (with or without the use of mechanical devices)," including "[m]ust be able to push, pull, move, and/or lift a minimum of 50 pounds to a minimum height of 3 feet and be able to push, pull, move, and/or carry such weight a minimum distance of 25 feet."  (*Id.*, at 45.)  Mr. Hernandez testified that the maintenance team was responsible for keeping up the facility, plumbing, and janitorial work (taking out the trash, cleaning floors, buffing).

Plaintiff completed a post-offer medical history questionnaire.  Plaintiff testified that he did not believe he had to provide any personal medical information on a job application.  But he filled out the form and signed it, answering that he did not have and had never had: a ruptured, bulging, or herniated disc; difficulty lifting, stooping, or bending; shooting pains from back through legs and/or from neck/upper back through arms; rotator cuff injury; shoulder pain; sore back; back pain; backache; difficulty moving back; knee injury; knee stiffness; or back stiffness.  Plaintiff also stated that he had not received treatment for his back, neck, knees, or lower extremities from any healthcare provider. He stated he was not "aware of any condition or injury that might impair or limit [his] ability to work for this company."  (*Id.*, at 11.)  He also signed a Statement of Understanding that any "misrepresentation or omission of facts requested on this form or other employment documents will be sufficient cause for disciplinary action – up to and including discharge." (*Id.*)  Plaintiff did not request an accommodation on September 1, 2011, the day he filled out his job application.  Plaintiff never requested an accommodation based on his shoulder/rotator cuff injury.  Plaintiff claims that he did request an accommodation based on his back problems.

Plaintiff testified that

My request with the Atriums was not to have to unload moving trucks.  We moved furniture all the time.  I mean, the Atriums, you don't work in a facility that big and not

– I mean, there was furniture owned by Lucielle Tutera. We had guest rooms that sometimes we would have to move to another guest room or whatever, but we would just pop it over on rollers. Everything we could roll. When you talk about going outside to unload a moving truck, like I told you before, that's just a whole new ball game.

(*Id.*, at 18.)

Plaintiff told Ms. Tutera on several occasions that he could not move furniture because of his back. Plaintiff never asked for a back support at work because he did not think it would do him any good. Plaintiff lifted heavy equipment while working for defendant Atriums, "like, drywall. I mean, everything that we moved was on rollers. That's what made it so easy. Drywall, plumbing equipment, like, cabinets. You know, I moved toilets. Just anything that you could – tile, bathroom tile, flooring, just anything that has to do with maintenance." (*Id.*, at 7.)

Mr. Hernandez testified at his deposition that maintenance assistants do have to move furniture "any time it is needed. If somebody decides they want a guest apartment, that furniture has to be relocated." (*Id.*, at 32.) Mr. Hernandez testified that usually two maintenance workers would complete one of these moves, sharing the load on heavier items. He said "A lot of times with Fred, he would just go do everything. And I'm like, 'Fred, ask for help.' You know, he tried to get it all himself." (*Id.*) Mr. Hernandez testified that he did not like this about Fred because "I have been there so long I know what it takes . . . a lot of the furniture you can just lay over on top of a cart and wheel it. That's no big deal. But . . . if you got to move something, don't struggle to move something, ask for help." (*Id.*)

Mr. Hernandez testified that "I think I recall he may have took some time off and said his back was bothering him. But any time he would say anything, he'd say 'I'm okay. I'm okay. I'm fine.' All the time." (*Id.*, at 33.) In a signed document, Mr. Hernandez stated "During casual conversation throughout his employment, Fred would mention to me that his back was aching, but he never

requested any sort of accommodation or claimed that he could not perform any tasks because of it." (*Id.*, at 34.)

### C.    The January 8, 2015 Moving Incident

On January 8, 2015, a new resident was moving into the Atriums. Ms. Tutera noticed that the new resident was moving into the Atrium's smallest one-bedroom unit. The Atriums usually knows ahead of time when a new family is moving in and will let the maintenance team know if they need to assist with the move. Even when families have their own movers, the maintenance team "would characteristically go up and help move boxes or a piece of furniture or this or that. . . [there were] anywhere from four to six move-ins a month. . . . . not to include . . . . A lot of times someone will move from retirement living to assisted living, and we will normally do those moves ourselves." (*Id.*, at 38.)

Ms. Tutera asked plaintiff to help the new resident move in. Plaintiff looked outside and saw a moving truck; he saw there was an older gentleman also waiting to unload the truck and told Ms. Tutera "[w]ith all due respect there is nothing in my job description that says I am responsible for moving tenants in or out of the building. (*Id.*, at 15.) He later testified that he said "Lucille, all due respect, you know I don't do that type of work any more because of my back. That's the reason I got out of that business." We had a short conversation about it." (*Id.*, at 27.) He added that he was fired "[b]ecause of my back. I mean, that was the center of the whole conversation. That was why I couldn't give her what she needed so I was fired because of my back." (*Id.*) Despite knowing that the Atriums had four-wheel carts, dollies, sliders, and hooks for moving furniture and equipment, plaintiff did not ask to retrieve it or attempt to use it. He did not offer or attempt to help with the move in any way. He did not look to see what needed to be moved from the truck before saying he would not do it. Plaintiff testified that he did not care what was on the truck, because "I'm not a mover." (*Id.*, at 8.)

Ms. Tutera told plaintiff that "we give service.  We have to do what we need to do . . . he said he couldn't because it hurt his back.  And then [she] said, well, you know, if you're a maintenance man and you can't do that, that's part of your job description."  (Doc. 42-1, at 48.)  She remembers plaintiff then saying he was leaving, to which she responded that he needed to check in with Judi if he was leaving.  Ms. Tutera fired plaintiff on January 8, 2015.  When plaintiff called Mr. Hernandez to ask whether he was allowed to come back to work on January 9th, 2015, Mr. Hernandez told plaintiff he was not.  The parties do not dispute that plaintiff was fired on January 8th.

According to the Atriums Employment Handbook "refusal of a job assignment/directive" is considered a Category I violation—the most serious category of violations.  Substantiated Category I offenses result in employment termination.  Plaintiff testified at his deposition that Ms. Tutera was retaliating against him "[b]ecause I didn't given her what she wanted on that day."  (Doc. 38-1, at 14.)  When asked if she indicated that she had a prejudice against people with back problems, plaintiff responded "It wasn't about my back.  It was about her not getting what she wanted that day.  She could care less about my back."  (*Id.*, at 14.)

Defendants' have a policy that requires the administrator, in this case Ms. Tutera, to contact HR whenever an employee presents a request for restricted duty due to a non-work-related injury or illness.  HR and Ms. Tutera then determine the nature of the injury, if the individual has a qualified disability, and whether a reasonable accommodation is available.  This procedure was not initiated following the incident with plaintiff.

The procedure would typically involve the employee obtaining a fitness for duty evaluation from their doctor explaining what their limitations are.  Defendants would also speak with the individual and review the evaluation in an attempt to accommodate the employee.

Defendants do not require employees to request an accommodation in a particular way, or at a particular time. Requests for accommodation can be made at any time and employees do not have to use the words "reasonable accommodation." Defendants have an investigation problem resolution procedure, which is a tool that outlines a procedure for employees to follow when they have an issue. It suggests that employees go to their department head (for plaintiff that would have been Mr. Hernandez) to try to resolve their problem, and if it cannot be resolved, the problem would be brought before the administrator (Ms. Tutera).

## II.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The party moving for summary judgment has the burden to show "the lack of a genuine issue of material fact." *Ascend Media Prof'l Servs., LLC v. Eaton Hall Corp.*, 531 F. Supp. 2d 1288, 1295 (D. Kan. 2008) (citing *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986))). Once the moving party meets this initial burden, the burden then shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Id.* (citing *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986))).

The nonmovant may not rest on his pleadings or "rely on ignorance of the facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 259 (1986)); *Conaway v. Smith*, 853

F.2d 789, 794 (10th Cir. 1988). Instead, the nonmovant is required to set forth specific facts, by referencing affidavits, deposition transcripts, or exhibits, from which a rational trier of fact could find for him. Fed R. Civ. P. 56(c)(1); *see also Ascend Media*, 531 F. Supp. 2d at 1295 (citing *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000)). Summary judgment is not a "disfavored procedural shortcut" —it is an "integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp.*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III.    Discussion

#### A.    Plaintiff's Disability Discrimination Claim

"The ADAAA prohibits discrimination against a qualified individual on the basis of disability." *Adair v. Muskogee*, 823 F.3d 1297, 1304 (10th Cir. 2016) (quoting 42 U.S.C. § 12112(a)). The Tenth Circuit uses the *McDonnell-Douglas* burden shifting framework to analyze employment-related claims based on circumstantial evidence. *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306–07 (2017) (quoting *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014) (referencing *McDonell-Douglas Corp. v. Green*, 411 U.S. 792 (1973))); *see also Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 883 (10th Cir. 2015). The *McDonnell Douglas* burden-shifting analysis requires: (1) plaintiff must first establish a prima facie case; (2) triggering defendants' burden to offer a legitimate non-discriminatory reason for firing plaintiff; (3) shifting the burden back to plaintiff to show there is a genuine issue of material fact whether defendants' proffered reason for firing plaintiff was pretextual.

#### Plaintiff's Prima Facie Case

To establish a prima facie case of discrimination, plaintiff must show that at the time he was fired, (1) he was disabled as defined by the ADA; (2) he was qualified, with or without accommodation, to perform the essential functions of the job; and (3) he was discriminated against

because of his disability.  The Tenth Circuit describes the prima facie case for disparate-treatment discrimination as not onerous.  *Hawkins*, 778 F.3d at 883.  This usually means that the plaintiff must show that he suffered an adverse employment action because of his disability.  *Dewitt*, 845 F.3d at 1308.

### 1.     Plaintiff Raises An Issue Of Material Fact As To Whether He Is Disabled Under The ADA

"Disability" is defined by the ADAAA "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ."  42 U.S.C. § 12102(1)(A–(C).  Plaintiff claims that his back problems constitute a disability under each category.

First, plaintiff argues that his back problems substantially limit the major life activity of working.  Plaintiff does not address any other major life activities in his briefing.  "An impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."  29 C.F.R. § 1630.2(j)(1)(ii).  The Tenth Circuit has explained that plaintiffs must "demonstrate that [they are] substantially limited in performing a class of jobs or broad range of jobs in various classes as compared to most people with comparable training, skills, and abilities."  *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 835 (10th Cir. 2011) (discussing the ADAAA amendments and interpretive guidance on relevant sections).

Plaintiff's briefing lacks any discussion about plaintiff's condition and its effect on his ability to work compared to people with comparable training, skills, and abilities in performing any class of job.  Plaintiff's argument describes his history of back problems and his decision to leave the moving industry.  It does not discuss plaintiff's ability to work as a maintenance assistant, except for defendant's assertion that his back hurt "all the time" and he had previously taken time off because of it.  This is insufficient to show that plaintiff's back problems substantially limit the major life activity

of working.  To the contrary, record evidence suggests that plaintiff often moved heavy items alone, despite his supervisor's recommendation to ask for help with heavy items.

Second, plaintiff claims that he has a record of impairment.  "An individual has a record of disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities."  29 C.F.R. § 1630.2(k)(1).  To have a record of impairment, plaintiff must again have "a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population . . . ." *Id.* § 1630.2(k)(2).

Plaintiff suggests that plaintiff's decision to leave the moving industry because of his back condition is a record of his impairment.  Plaintiff also claims that he reported his medical condition to defendants, with no record citation.  The record suggests that plaintiff discussed back pain from time to time but not that he ever reported a medical condition to defendants.  To the contrary, plaintiff had the opportunity to make a record of his back problems at the time he was hired, by marking "yes" on his post-offer medical history questionnaire.  Instead, plaintiff admits that he marked "no"—indicating no history of back or any other type of joint pain.  Plaintiff has not shown that there was a record of his back problems.  Instead he made every effort to ensure that there was no record.

Third, plaintiff argues that he was regarded as having back problems.  To prove that an employer regarded him as having a disability, a plaintiff must show that: "(1) he has an actual or perceived impairment, (2) that impairment is neither transitory nor minor, and (3) the employer was aware of and therefore perceived the impairment at the time of the alleged discriminatory action." *Adair*, 823 F.3d at 1306.  "Whether or not the impairment limits or is perceived to limit" emphasizes that a plaintiff bringing a "regarded as" claim only has to prove that he "was regarded as having a physical or mental impairment." *Id.*  Plaintiffs need not prove that they are substantially limited in a

major life activity for a regarded as claim. *Id.* But plaintiff must show that the impairment is not

"transitory and minor . . . with an actual or expected duration of 6 months or less." 42 U.S.C. §

12102(3)(B). The standard for being regarded as disabled under the ADA is significantly lowered with

the ADAAA.

Here, plaintiff's back issues constituted some type of physical impairment. He took time off

because of his back. He talked to co-workers and his supervisor about his back pain from time to time.

And he has been diagnosed with chronic lower back pain and mild degenerative disc disease. Health

care professionals have recommended that plaintiff do specific exercise or stretches to treat his back

problems. Plaintiff's back problems are not transitory. According to the record, plaintiff's initial back

injury was in 2001 and he left a long profession as a mover in 2009 because of it. Defendants were

also aware of plaintiff's impairment at the time he was fired on January 8, 2015. Mr. Hernandez

admitted that defendant took time off due to back pain and that he often spoke of back pain, and Ms.

Tutera admitted that plaintiff said he could not help the new residents because of his back. The court

finds that plaintiff has submitted sufficient facts that a reasonable jury could find that defendants

regarded plaintiff as having back problems.

> **2.    Plaintiff Submitted an Issue of Material Fact on Whether He
>    Was Qualified to Perform the Essential Functions of
>    Maintenance Assistant**

Next, plaintiff must be able to show that he was a qualified individual for the position of

maintenance assistant. A "qualified individual" is "an individual who, with or without reasonable

accommodation, can perform the essential functions of the employment position that such individual

holds or desires." 42 U.S.C. § 12111(8). "[C]onsideration shall be given to the employer's judgment

as to what functions of a job are essential, and if an employer has prepared a written description before

advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id.*

Courts consider two criteria to determine whether a plaintiff is qualified: (1) "whether the plaintiff's impairment prevented him from performing the essential functions of his job, and if so, whether he might have nevertheless been able to perform those functions if the employer provided him a reasonable accommodation." *Hawkins*, 778 F.3d at 884.

Employers challenging a plaintiff's claim that he can perform the essential functions of a job, must provide evidence that a job requirement is an essential job function. *Id.* (citing *Mason v. Avaya Comms.*, 357 F.3d 1114, 1120 (10th Cir. 2004)). The "employer may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description. *Id.* Essential functions are not "marginal functions"; they are "the fundamental job duties of the employment position." 29 C.F.R. § 1630.2(n)(1). Essential functions may be essential because they "are the reason the position exists" or because there are a "limited number of employees available among whom the performance of that job function can be distributed." *Id.* § 1630.2(n)(2).

Defendants suggest that two essential job functions for the maintenance assistant position were written in the application materials: 1) assisting others in lifting heavy equipment, and 2) pushing, pulling and or lifting a minimum of 50 pounds to a minimum height of 3 feet and a minimum distance of 25 feet. Defendant argues that an additional essential job function was moving furniture both between existing apartments and when new residents moved in. The court agrees. But the court also finds that plaintiff has provided sufficient evidence that he was able to perform all of these functions. He testified at his deposition that he could meet the 50 pound lifting requirements and that he did it every day. Plaintiff and Mr. Hernandez testified that plaintiff often managed work that many

maintenance workers would request an extra hand on.  Mr.  Hernandez agreed that plaintiff was a go-getter and never complained and that he was a hard worker.  Plaintiff has submitted a triable issue as to whether he was able to perform the essential job functions of maintenance worker.

### 3.    Plaintiff Submitted An Issue of Material Fact On Whether He Was Discriminated Against Because of His Disability

Lastly, for plaintiff to set out a prima facie case of discrimination he must show that defendants discriminated against him because of his disability.  Defendants suggest that plaintiff was fired for refusing to follow Ms. Tutera's request to help a new resident move in.  Plaintiff argues that he was fired because he asked for a reasonable accommodation—not to have to unload a moving truck—due to his back problems.  Due to the temporal proximity of the termination of plaintiff's employment to his alleged request for an accommodation, and the fact that Ms. Tutera admitted that plaintiff said he could not unload the truck because of his back, the court finds that plaintiff has submitted an issue of material fact on this issue.  Plaintiff has established a prima facie case of disability discrimination.

### Defendants' Legitimate, Nondiscriminatory or Non-retaliatory Reason For Firing Plaintiff

Once plaintiff establishes a prima facie case for discrimination, the burden shifts to defendants to establish a legitimate, nondiscriminatory or non-retaliatory reason for firing plaintiff.  As discussed above, defendants claim that plaintiff was fired for violating Ms. Tutera's request that he help a new resident move in to the facility.  Refusing Ms. Tutera's request was a category I offense for which terminating plaintiff's employment was an appropriate remedy.

### Pretext

Next, the burden shifts back to plaintiff to show that defendants' proffered legitimate non-discriminatory reason for terminating plaintiff's employment is pretextual.  "[A] plaintiff can establish pretext by showing the defendant's proffered non-discriminatory explanations for its actions are so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [they are]

unworthy of belief." *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010) (quoting

*Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1197 (10th Cir. 2008)).  "Under *McDonnell*

*Douglas*, [the court's] role isn't to ask whether the employer's decision was wise, fair or correct, but

whether [it] honestly believed [the legitimate, nondiscriminatory] reasons [it gave for its conduct] and

acted in good faith on those beliefs."  *Id.* (quoting *Rivera v. Denver*, 365 F.3d 912, 925 (10th Cir.

2004)).  Plaintiffs can show pretext in many ways.  But

> [t]ypically, a plaintiff may show pretext in one of three ways: (1) with evidence that the
> defendant's stated reason for the adverse employment action was false; (2) with
> evidence that the defendant acted contrary to a written company policy prescribing the
> action to be taken by the defendant under the circumstances; or (3) with evidence that . .
> . [the plaintiff] was treated differently from other similarly-situated employees who
> violated work rules of comparable seriousness.

*Dewitt*, 845 F.3d at 1307 (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230

(10th Cir. 2000)).

Plaintiff argues that defendants' stated reason is pretextual because the only reason

plaintiff refused to obey Ms. Tutera's request was because of his disability.  The testimony of

various witnesses confirms this.  Plaintiff told Ms. Tutera that he could not move items off the

truck because of his back.  Viewing the facts in the light most favorable to plaintiff, instead of

engaging in the interactive process envisioned by the ADA for determining the extent of

plaintiff's limitation, Ms. Tutera fired him on the spot.  Plaintiff has submitted a triable issue on

pretext and his disability discrimination claim therefore survives summary judgment.

### B.    Plaintiff's Failure to Accommodate Claim

Plaintiff argues that he requested a reasonable accommodation when he asked not to have to

unload moving trucks.  "The ADAAA prohibits an employer from unlawfully discriminating against

an employee by failing to make reasonable accommodations to the known physical or mental

limitations of an otherwise qualified individual with a disability who is an . . . employee."  *Id.* at 1315

(quoting *E.E.O.C. v. C.R. Eng., Inc.*, 644 F.3d 1028, 1048 (10th Cir. 2011)).  "The statute thus establishes a cause of action for disabled employees whose employers fail to reasonably accommodate them."  *C.R. Eng.*, 644 F.3d at 1048 (quoting *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001)).

As defined by the ADA, the type of reasonable accommodation at issue in this case would be "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities."  28 U.S.C. § 12111(9)(B).  An employee must make an adequate request for accommodation, putting their employer on notice so that employer and employee can engage in an "interactive process [requiring] participation by both parties."  *Dewitt*, 845 F.3d at 1315–16 (quoting *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 916 (10th Cir. 2004) (quoting *Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619 (10th Cir. 1998))).

Once an employee adequately requests an accommodation, "[t]he federal regulations implementing the ADA envision an interactive process that requires participation by both parties."  *Id.* at 1315 (quoting *Bartee*, 374 F.3d at 916)).  Employees must clearly request assistance for their disability; the request must be sufficiently direct and specific, but need not use the words "reasonable accommodation."  *C.R. Eng., Inc.*, 644 F.3d at 1049.

The court finds that plaintiff has submitted an issue of material fact as to whether defendants failed to reasonably accommodate plaintiff's back injury.  A reasonable trier of fact could find that plaintiff's many comments to his co-workers about his back pain; his repeated refusals to Ms. Tutera to move furniture due to his back (including the August 8, 2015 incident); and his request for time off in late 2014 due to his back pain, put defendants on notice that plaintiff was requesting a reasonable

accommodation.    Many of plaintiff's actions seem to undermine the view that he requested a reasonable accommodation: his false denial of all previous back problems on his post-offer medical history questionnaire; Mr. Hernandez's testimony that plaintiff always said he was okay after complaining about his back; and plaintiff's tendency to try to do even heavy lifting jobs by himself. But viewing the facts in the light most favorable to plaintiff, there is an issue of material fact whether plaintiff requested a reasonable accommodation.    Summary judgment is therefore denied on plaintiff's reasonable accommodation claim.

### C.    Plaintiff's Retaliation Claim

Plaintiff's final claim is that defendants fired him because he refused—because of his back problems—to comply with Ms. Tutera's request that he help a family move in to the Atriums.    Without direct evidence of retaliation, the court again uses the *McDonnell Douglas* burden-shifting framework to analyze plaintiff's claim.    *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1207–08 (10th Cir. 2007). To state a prima facie case for retaliation, plaintiff must show that "(1) he engaged in protected opposition to discrimination; (2) that a reasonable employee would have found the challenged action materially adverse; and (3) that a causal connection existed between the protected activity and the materially adverse action."    *Id.* (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)).

Plaintiff has submitted issues of material fact on this claim.    As discussed above, a reasonable trier of fact could find that plaintiff requested a reasonable accommodation—not to unload moving trucks.    Plaintiff was fired at the time he requested a reasonable accommodation, and employment termination is something a reasonable employee would find materially adverse.    And the proximity in time between plaintiff's request for an accommodation and the termination of his employment supports

a causal connection between the protected activity and material adverse action.  Summary judgment is therefore denied on plaintiff's retaliatory termination claim.

**IT IS THEREFORE ORDERED** that defendants' Motion for Summary Judgment (Doc. 37) is denied.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Leave to File Surreply (Doc. 46) is granted.

Dated February 2, 2018, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**