IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**FREDERICK E. PARAHAM,**

      **Plaintiff,**

      **v.**

**ATRIUMS MANAGEMENT COMPANY, INC.
and TUTERA SENIOR LIVING AND
HEALTH CARE, LLC,**

      **Defendants.**

**Case No. 16-2539**

## MEMORANDUM & ORDER

This matter comes before the court upon plaintiff Frederick E. Paraham's Motion to Alter Judgment for Attorney's Fees, Costs, and Prejudgment Interest (Doc. 96) and defendants Atriums Management Company, Inc, and Tutera Senior Living and Health Care, LLC's Motion for Judgment As a Matter of Law Pursuant to Rule 50(b) (Doc. 99).

I.    **Background**

Plaintiff filed this suit on August 1, 2016, claiming that defendants discriminated against him, failed to offer him a reasonable accommodation, and ultimately retaliated against him by terminating his employment, all based on his disability in violation of the Americans with Disabilities Act ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. §§ 12101–12213. The court denied defendants' motion for summary judgment on February 2, 2018. (Doc. 49.) On March 30, 2018, after a week-long trial, a jury found that defendants discriminated against plaintiff based on a disability or that defendants denied plaintiff a reasonable accommodation, and that defendants retaliated against plaintiff for engaging in conduct protected by the ADA. The jury awarded plaintiff $63,694 in compensatory damages and for emotional distress and $9,571 in compensatory damages for lost wages

-1-

including post-judgment interest at rate of 2.12% annually. Before the jury returned its verdict, defendants moved for judgment as a matter of law under Fed. R. Civ. P. 50(a) on each claim and on plaintiff's claim for punitive damages. The court granted the motion as to punitive damages but denied the motion in all other respects.

## II. Legal Standards

### A. Renewed Motions For Judgement As A Matter Of Law

Fed. R. Civ. P. 50(b) motions renewing a party's motion for judgment as a matter of law pursuant to Rule 50(a) must be brought within 28 days of the entry of judgment. Defendants timely renewed their motion. Under Rule 50(b), the court may "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b). The court applies the same standard to a 50(b) motion as it does to one for summary judgment under Rule 56(c). *Cox Enters., Inc. v. Cox Commc'ns, Inc.*, 871 F.3d 1093, 1096 (10th Cir. 2017). The court may only grant judgment as a matter of law "when a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Id.* (quoting Fed. R. Civ. P. 50(a)(1)). "In other words, judgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position." *Id.* (quoting *Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments*, 843 F.3d 1225, 1247 (10th Cir. 2016)).

### B. Attorney Fees And Costs

*Compliance With Local Rules*

Local Rule 54.2 requires the party moving for attorney's fees to provide a statement that the parties consulted and were unable to agree on attorney's fees and costs. D. Kan. Rule 54.2. The

statement must include the date of consultation, names of participants, and the result of consulting. Plaintiff has complied with Local Rule 54.2.

*Attorney Fee Awards Under The ADA*

Under § 12205 of the ADA, the court may allow a prevailing party "a reasonable attorney's fee, including litigation expenses, and costs. . . ." "The proper procedure for determining a reasonable attorney's fee is to arrive at a lodestar figure by multiplying the hours plaintiff's counsel reasonably spent on the litigation by a reasonable hourly rate." *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005) (citing *Case v. Unified Sch. Dist. No. 233, Johnson Cnty.*, 157 F.3d 1243, 1249 (10th Cir. 1998)). Plaintiff "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Case*, 157 F.3d at 1249.

## III. Discussion

### A. Defendants Fail to Show Their Entitlement To Judgment As A Matter Of Law

The ADAAA prohibits covered employers from subjecting their employees to disability-based discrimination and retaliation. 42 U.S.C. §§ 12112, 12203. To establish his discrimination claim, plaintiff needed to prove that when defendants terminated his employment, (1) he was disabled as defined by the ADAAA; (2) "he was qualified, with or without reasonable accommodation, to perform the essential functions of his job; and (3) he was fired because of his disability." *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 883 (10th Cir. 2015) (quoting *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011)). To establish his failure to accommodate claim, plaintiff needed to prove: (1) he is a qualified individual with a disability; (2) he requested a plausibly reasonable accommodation for his disability; (3) defendants were aware of his disability at the time of the accommodation request; and (4) defendants failed to reasonably accommodate the disability. *See McFarland v. City and Cnty of Denver*, 744 F. App'x 583, 586 (10th Cir. 2018); *Nunez v. Lifetime*

*Prods., Inc.*, 725 F. App'x 628, 631 (10th Cir. 2018); *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 830 n.2 (10th Cir. 2011). To establish his retaliation claim, plaintiff needed to prove: "'(1) []he engaged in protected opposition to discrimination; (2) a reasonable employee would have found h[is] employer's subsequent action to be materially adverse; and (3) a causal connection exists between h[is] protected activity and the employer's action.'" *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018) (quotation omitted).

Defendants contest the evidence plaintiff produced on these claims with four arguments:

(1) there was insufficient evidence for the jury to find plaintiff was disabled on January 8, 2015;

(2) There was insufficient evidence for the jury to find defendants failed to provide reasonable accommodation on January 8, 2015;

(3) There was insufficient evidence for the jury to find plaintiff engaged in protected conduct on January 8, 2015 by making an adequate, direct and specific request for reasonable accommodation; and

(4) There was insufficient causation evidence for the jury to find defendants terminated plaintiff because of a disability or protected conduct.

(Doc. 99, at 1.)

Because defendants fail to show that no legally sufficient evidentiary basis existed for a reasonable jury to find for plaintiff on each of these points, defendants' renewed motion is denied.

*1. There Was Sufficient Evidence That Plaintiff Was Disabled*

The issue initially before the court is whether this case's trial would have provided a reasonable jury legally adequate evidence that plaintiff was disabled. "Under the ADAAA's amended definition, '[t]he term "disability" means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment.'" *Adair v. City of Muskogee*, 823 F.3d 1297, 1305 (10th Cir. 2016) (quoting 42 U.S.C. § 12102(1)). Plaintiff claims that he presented sufficient evidence

under each subsection. The court need not address all three alternatives, however, because plaintiff presented legally sufficient evidence of the first alternative. For the following reasons, a reasonable jury could find that a physical impairment substantially limited plaintiff in one or more major life activities.

"An impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). "'To satisfy this definition, a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities.'" *Crowell v. Denver Health and Hosp. Auth.*, 572 F. App'x 650, 657 (10th Cir. 2014) (quotation omitted). The first two requirements are questions of law for the court. *Id.* The third requirement, however, "is ordinarily a question of fact for the jury." *Id.*

Evidence that plaintiff's chronic back condition limits his abilities to lift and work satisfies the initial two requirements.[1] *See* 29 C.F.R. § 1630.2(h)(1) (defining physical impairment to include "[a]ny physiological disorder or condition . . . affecting one or more body systems, such as . . . musculoskeletal"); 42 U.S.C. § 12102(2)(A) (defining "major life activities" to include "lifting . . . and working"). Defendants do not dispute these requirements.

---

[1] Plaintiff claims additional impairments (right shoulder and right knee) and affected major life activities (sleeping and bending). But plaintiff's theory of the case turns on defendants' decision to terminate—rather than accommodate—him after he expressed an inability to do a requested task *because of his back*. No evidence shows that plaintiff expressed like concern to defendants over the task in relation to his other claimed impairments. While plaintiff might be able to establish that his other claimed impairments also would qualify him as "disabled" under the ADAAA, (the first element of his discrimination and failure to accommodate claims), only plaintiff's back impairment can prove the remaining elements of his claims. Stated otherwise, the trial evidence does not prove that defendants fired him for having and/or requesting accommodation for any impairments but the back condition to which his accommodation request referred. *See Hawkins*, 778 F.3d at 883 (conditioning ADAAA discrimination claim, in part, on proof the employer fired the employee "because of his disability"); *McFarland*, 744 F. App'x at 586 (conditioning failure to accommodate claim, in part, on proof of the employer's knowledge of the disability for which accommodation was requested).

As to the additional life activities in which plaintiff claims to be substantially limited, analyzing those particular activities is unnecessary in this case given the evidence of substantial limitation in lifting and working. *See* 42 U.S.C. § 12012(4)(C); 29 C.F.R. § 1630.2(j)(1)(viii) ("An impairment that limits one major life activity need not substantially limit other major life activities in order to be considered a substantially limiting impairment.").

Defendants instead dispute the third requirement—i.e., whether plaintiff proved his back impairment substantially limits his lifting and working abilities as compared to most people in the general population. Defendants make three supporting arguments. Each, however, is unpersuasive.

First, defendants argue that plaintiff's evidence proved little more than the fact that a doctor diagnosed plaintiff as having mild degenerative disc disease and arthritis of the low back resulting in chronic back pain. Defendants are correct that a medical diagnosis alone is insufficient to establish that an impairment is substantial. (*See* Doc. 100, at 4 (citing *Taylor v. Kan. Dept. of Corr.*, Case No. 16-2056, 2017 WL 1479375, *3 (D. Kan. Apr. 25, 2017) (quotation omitted) ("A medical diagnosis is insufficient; rather, the ADA requires plaintiffs to offer evidence that 'the extent of the limitation caused by their impairment in terms of their own experience is substantial.'")). But defendants take an inappropriately broad view of what the law requires and an inappropriately narrow view of plaintiff's evidence.

The level of limitation on an individual's ability required by the ADAAA is only substantial—not significant or severe—as compared to most people in the general population. *See* 29 C.F.R. § 1630.2(j)(1)(ii); *Significant or Severe Restriction Not Required; Nonetheless, Not Every Impairment Is Substantially Limiting*, Appendix to Part 1630—Interpretive Guidance on Title I of the Americans With Disabilities Act, 29 C.F.R. § 1630.2, App. (quoting legislative history showing that Congress envisioned a "substantial" limitation to be an "important" limitation but not one that need rise to the level of severely restricting or significantly restricting the ability to perform a major life activity).[2] Congress intended courts to construe "substantially limits," not as "a demanding standard" requiring "extensive analysis," but "broadly in favor of expansive coverage" so that it places the primary object of attention in ADAAA

---

[2] "Although the interpretive guidance is not controlling, [courts] may resort to it for guidance." *Burgard v. Super Valu Holdings, Inc.*, No. 96-1199, 1997 WL 278974, at *3 n.2 (10th Cir. May 27, 1997).

cases on whether employers "have complied with their obligations and whether discrimination has occurred." 29 C.F.R. § 1630.2(j)(i) and (iii). Illustrating the simplicity of the analysis Congress intended, the Interpretive Guidance to the amended regulations explains,

> [I]f an individual has a back impairment that results in a 20-pound lifting restriction that lasts for several months, he is substantially limited in the major life activity of lifting, and therefore covered under the first prong of the definition of disability.

*See Effects of an Impairment Lasting Fewer Than Six Months Can Be Substantially Limiting*, Appendix to Part 1630—Interpretive Guidance on Title I of the Americans With Disabilities Act, 29 C.F.R. § 1630.2, App.; *see also id.* at *Substantial Limitation in Only One Major Life Activity Required* (stating the same and adding that the individual "need not also show that he is unable to perform activities of daily living that require lifting in order to be considered substantially limited in lifting."). Similarly,

> [I]f a person whose job requires heavy lifting develops a disability that prevents him or her from lifting more than fifty pounds and, consequently, from performing not only his or her existing job but also other jobs that would similarly require heavy lifting, that person would be substantially limited in working because he or she is substantially limited in performing the class of jobs that require heavy lifting.

*See id.* at *Substantially Limited In Working* and n.3.

While no evidence shows that any doctor placed lifting restrictions on plaintiff, the trial evidence, taken in the light most favorable to plaintiff, would allow a reasonable jury to infer that his back condition substantially limited his ability to engage in unassisted heavy lifting and the class of jobs requiring that ability.

Plaintiff's back pain started "in the late nineties" while working in the moving industry unloading moving trucks. That process involved repeatedly deadlifting, maneuvering, and carrying without dollies or carts heavy items. Plaintiff's back condition worsened over the course of that career. By 2003, plaintiff had pain so severe that it brought him to his knees and required others' assistance to help him

walk.  A doctor who examined plaintiff told him he slipped a disc.[3]  Plaintiff's back pain peaked in 2009. He experienced several instances of pinching or slipping in his back accompanied by sharp pain that dropped him to his knees.  Plaintiff also found it difficult to get out of bed and walk.  As a result, plaintiff ended his 21-year career in the moving industry.

Plaintiff learned a new trade as an HVAC technician, which he sought to use in defendants' employ at The Atriums.  Months into working for defendants, The Atrium's facility administrator, Ms. Lucille Tutera, tasked plaintiff with moving a guest room.  Plaintiff told his supervisor, Joe Hernandez, "I just came out of the moving industry, . . . I really don't do that type of work, you know."  Mr. Hernandez then showed plaintiff how they use rollers and dollies to move items around the facility. Once plaintiff "found out we could just tip everything on rollers and push it, . . . of course, [he] helped." Plaintiff described that moving items in this fashion—usually short distances, occasionally, around the facility—differed greatly from the manner and frequency of moving he was accustomed to while working in the moving industry.  While working at The Atriums, plaintiff always used the assistance of dollies, carts, and/or other workers to lift and move items.  He never deadlifted any items or moved them in the same fashion he was accustomed to when unloading moving trucks.

Still, plaintiff experienced back pain.  Time to time, plaintiff would tell Mr. Hernandez his back was aching.  On one occasion, plaintiff told Mr. Hernandez he needed more time to complete a particular task of replacing ceiling tiles because his back and shoulder pain was too great to complete the task that day.  One month before his termination, plaintiff took three days off work because his back pain was worsening and required rest.  Moments before he was fired, plaintiff expressed that his back would not

---

[3] While plaintiff produced no medical records relating to this visit, he testified that he requested such records but the hospital could not produce them as it kept no records older than five years.

allow him to help unload a moving truck. And following his termination, plaintiff's back condition rendered him unable to participate in moving himself to a new residence.

Another doctor evaluated plaintiff after his termination from defendants' employment. Notes from the visit reflect that plaintiff reported worsening pain during palpation of the back and bending forward. X-rays showing "degenerative disc disease" and arthritis in plaintiff's low back confirmed to the doctor that plaintiff was experiencing "chronic low back pain that he had had for a long time." At trial, the doctor agreed that manual heavy labor—like the sort plaintiff engaged in over the course of his 21-year career in the moving industry—can increase pain of the sort experienced by plaintiff and such pain can affect a person's abilities to, among other tasks, bend and lift.

Importantly, the jury was entitled to interpret this evidence with two particular points in mind. First, the determination of whether plaintiff's back impairment substantially limits his ability to lift or work in a particular class of jobs "shall be made without regard to the ameliorative effects of mitigating measures." 42 U.S.C. § 12102(4)(E)(i); 29 C.F.R. § 1630.2(j)(1)(vi). "An individual who, because of the use of a mitigating measure, has experienced no limitations, or only minor limitations, related to the impairment may still be an individual with a disability, where there is evidence that in the absence of an effective mitigating measure the individual's impairment would be substantially limiting." *Mitigating Measures*, Appendix to Part 1630—Interpretive Guidance on Title I of the Americans With Disabilities Act, 29 C.F.R. § 1630.2, App.; *see also Yinger v. Postal Presort, Inc.*, 693 F. App'x 768, 772–73 (10th Cir. 2017) (reversing award of summary judgment where district court failed to consider the effects of plaintiff's heart condition without the ameliorative effects of his pacemaker). Thus, the fact that plaintiff performed lifting activities with the assistance of dollies, carts, and/or other workers does not preclude the finding that, without such assistance, plaintiff's lifting abilities were substantially limited.

Second, the focus on whether a major life activity is substantially limited involves considering plaintiff's "pain when performing [the] major life activity" and "not . . . what outcomes [he] can achieve." 29 C.F.R. § 1630.2(j)(4)(ii)–(iii). "[A]n individual whose impairment causes pain . . . that most people would not experience when performing that major life activity may be substantially limited." *Condition, Manner, or Duration*, Appendix to Part 1630—Interpretive Guidance on Title I of the Americans With Disabilities Act, 29 C.F.R. § 1630.2, App. Viewed in the light most favorable to plaintiff, plaintiff's evidence would allow a jury to infer that heavy lifting or performing jobs requiring that skill causes him pain that most people performing the same tasks would not experience.

Turning to defendants' second argument, defendants criticize the lack of evidence directly comparing plaintiff's abilities to the general population's same abilities. "But it is settled in our Circuit that plaintiffs need not present comparative evidence regarding the population as a whole in order to prove they are disabled." *Nowlin v. Kmart Corp.*, No. 99-3186, 2000 WL 1588116, at *2 (10th Cir. Oct. 25, 2000); *see also Russell v. Phillips 66 Co.*, 687 F. App'x 748, 754 n.7 (10th Cir. 2017) (requiring only "evidence *with which to compare*"—as opposed to evidence directly comparing—plaintiff's ability to that of most people in the general population). Indeed, the regulations explain that the comparison usually will not require such "scientific, medical, or statistical analysis." 29 C.F.R. § 1630.2(j)(1)(v). The Interpretive Guidance to the regulations further underscores that, under the ADAAA, the comparison "need not be exacting." *Scientific, Medical, or Statistical Evidence Not Required; But Permissible When Appropriate*, Appendix to Part 1630—Interpretive Guidance on Title I of the Americans With Disabilities Act, 29 C.F.R. § 1630.2, App. The above-discussed evidence adequately defined plaintiff's lifting and working limitations to enable the jury to compare those limitations to most people's lifting and working abilities.

Defendants' third and final argument focuses solely on the major life activity of working. Initially, evidence showing that plaintiff is substantially limited in lifting makes this argument nondeterminative. *See* 42 U.S.C. § 12012(4)(C); 29 C.F.R. § 1630.2(j)(1)(viii) ("An impairment that limits one major life activity need not substantially limit other major life activities in order to be considered a substantially limiting impairment."); *Substantially Limited in Working*, Appendix to Part 1630—Interpretive Guidance on Title I of the Americans With Disabilities Act, 29 C.F.R. § 1630.2, App. ("In most instances, an individual with a disability will be able to establish coverage by showing substantial limitation of a major life activity other than working; impairments that substantially limit a person's ability to work usually substantially limit one or more other major life activities.").

Nonetheless, defendants are incorrect in suggesting that, to establish a substantial limitation in the ability to work, plaintiff needed to prove "significant restrictions performing both (1) the job at issue (maintenance assistant), <u>and</u> (2) either jobs utilizing or jobs not utilizing 'similar training, knowledge, skills or abilities' within the geographical area." (Doc. 100, at 5 (quoting *E.E.O.C. v. BNSF Railway Co.*, 853 F.3d 1150, 1156 (10th Cir. 2017)). To begin, the standard defendants offer relates only to "regarded as" prong claims under the ADA prior to its amendment. *See BNSF Railway Co.*, 853 F.3d at 1155–56, n.2 (applying the law to plaintiff's "regarded as" claim "as it stood prior to [the ADAAA's] effective date"); *but see Adair*, 823 F.3d at 1306 (discussing new standard for regard as claim under ADAAA). In contrast, proving substantial limitation in working under the ADAAA's "actual disability" prong only requires evidence that plaintiff's "impairment substantially limits his or her ability to perform a class of jobs or broad range of jobs in various classes as compared to most people having comparable training, skills, and abilities." *Substantially Limited in Working*, Appendix to Part 1630—Interpretive Guidance on Title I of the Americans With Disabilities Act, 29 C.F.R. § 1630.2, App. Further, the Interpretive Guidance expressly disfavors pre-ADAAA standards of the sort relied on by defendants for determining

whether an impairment substantially limits the major life activity of working. *See id.* at n.3 (suggesting a "more straightforward and simple" analysis should occur under the ADAAA than occurred under the "complex and onerous" standard applied in earlier ADA cases like *Duncan*, where a "manual laborer whose back injury prevented him from lifting more than 20 pounds was not substantially limited in working because he did not present evidence of the number and types of jobs available to him in the Washington area; testimony concerning his inquiries and applications for truck driving jobs that all required heavy lifting was insufficient").

Overall, whether plaintiff's impairment substantially limited him in one or more life activities was a question of fact for the jury to resolve. *Crowell*, 572 F. App'x at 657. It was also a question that involved rules Congress intended others to apply "broadly in favor of expansive coverage." 29 C.F.R. § 1630.2(j)(i) and (iii); *see also* 42 U.S.C. § 12102(4)(A). The jury's verdict shows that it resolved that question in favor of finding a substantially limiting impairment necessary to qualify plaintiff as "disabled" under the "actual disability or "record of" prongs.[4] For the reasons discussed above, a reasonable jury could decide the same.

*2 & 3. There Was Sufficient Evidence Plaintiff Requested A Reasonable Accommodation That Defendants Failed To Provide*

Defendants' next two issues concern plaintiff's request for accommodation. Defendants argue that plaintiff failed to prove that he was entitled to and not offered a reasonable accommodation, because: (1) plaintiff failed to prove he had an actual disability or a record of disability and plaintiff cannot recover under the ADA for failure to accommodate if he was only "regarded as" disabled; (2) plaintiff failed to

---

[4] Had the jury simply found evidence that plaintiff qualified as disabled under the "regarded as" prong, it presumably would not have found defendants liable for failure to accommodate and instead followed the court's instruction that "[a]n employer is not required to provide reasonable accommodation to an employee who meets the definition of disability solely because he is 'regarded as' disabled." *C.f. CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009) ("Juries are presumed to follow the court's instructions.").

adequately request an accommodation under the Tenth Circuit's decision in *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028 (10th Cir. 2011); and (3) defendants offered reasonable accommodations.

Defendants' first argument fails for the reasons discussed above. Defendants' second and third arguments also fail.

Reasonable accommodations "may include . . . job restructuring, part-time or modified work schedules, reassignment to vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). "Even though 'the notice or request [for accommodation] does not have to be in writing, be made by the employee, or formally invoke the magic words "reasonable accommodation," it nonetheless must make clear that the employee wants assistance for his or her disability.'" *Nunez*, 725 F. App'x at 631–32 (quoting *C.R. England, Inc.*, 644 F.3d at 1049). A request for accommodation "must make the employer aware 'of both the disability and the employee's desire for accommodations for that disability.'" *Id.* at 632 (quoting *C.R. England, Inc.*, 644 F.3d at 1049).

Here is what the evidence viewed in plaintiff's favor showed. There was testimony at trial that on January 8, 2015, Ms. Tutera called plaintiff to the second floor of The Atriums. He responded, and when he arrived, she asked him to unload a moving truck. At that time no items had been unloaded. He responded "Lucille, all due respect but you know I don't do that kind of work anymore because of my back." When she insisted, he again said he could not do the work because of his back. There was testimony that plaintiff was generally very helpful and capable, that he did his job and used tools such as dollies or carts to assist him in moving heavy or awkward objects. But plaintiff also testified about what is required to unload a moving truck and how such activity was not possible with his back condition. Plaintiff testified that both his supervisor and Ms. Tutera were aware of his back issues because he had

mentioned his back to them on various occasions.  A reasonable jury hearing this testimony would have a legally sufficient basis to find that defendants knew plaintiff had a back condition.  Because there was testimony that this was the first time someone asked plaintiff to unload a moving truck, there also was legally sufficient evidence for a reasonable jury to find that plaintiff was requesting a reasonable accommodation—not to have to unload a moving truck.  Plaintiff directly based his request on his back condition. *But see Nunez*, 725 F. App'x at 632 (finding an alleged request for accommodation inadequate where employee based the request vaguely "on improving comfort and productivity" rather than specifically on his back condition); *C.R. England, Inc.*, 644 F.3d at 1050 (finding an alleged request for accommodation inadequate where employee requested time off without tying the request to his HIV-positive status).  Rather than providing that accommodation or engaging in the interactive process envisioned by the ADAAA, Ms. Tutera immediately fired plaintiff.  A reasonable jury, therefore, had a legally sufficient basis to find that plaintiff requested a reasonable accommodation that defendants failed to provide.

### 4. There Was Sufficient Evidence On Causation

Defendants argue that plaintiff presented insufficient evidence that defendants fired plaintiff because of his disability or protected conduct or discriminated against him because of his disability. Defendants cite plaintiff's deposition testimony as evidence that plaintiff knew the termination of his employment had nothing to do with his disability.  Plaintiff's deposition testimony was that: "it wasn't about my back.  It was about her not getting what she wanted that day.  She could care less about my back." (Doc. 38-1, at 14.)  Defendants also reference evidence that Ms. Tutera had prior opportunity to terminate plaintiff's employment had she wished to do so, when he failed to show up to work or to notify his employers that he would be absent.

However, testimony at trial was sufficient for a jury to conclude that Ms. Tutera terminated plaintiff's employment because he requested a reasonable accommodation for his back condition—by

requesting not to have to unload moving trucks due to his back condition. Plaintiff testified that his request for a reasonable accommodation occurred when Ms. Tutera asked him to unload a moving truck. He responded by saying "Lucille, all due respect but you know I don't do that kind of work anymore because of my back." As stated above, a request for accommodation does not have to include the specific words "reasonable accommodation."

Plaintiff's supervisor testified that he never remembered plaintiff unloading a moving truck, that unloading trucks was not an essential function of the maintenance assistant job, and that it was not a regular job duty. Plaintiff's testimony established the following. He left the moving industry because of his back conditions. He never unloaded a moving truck while working for defendants. There were various tools and machinery that helped maintenance assistants do work without straining their backs. Prior to January 8, 2015, Ms. Tutera never asked plaintiff to unload a moving truck. And when she did ask him on that day, he responded "Lucille, all due respect but you know I don't do that kind of work anymore because of my back." When plaintiff said he could not do the work, he testified that Ms. Tutera responded that, he could find a new job, clock out and leave. From this testimony, among other statements made at trial, a reasonable jury had legally sufficient evidence to find for plaintiff on the issue of causation.

### B. Plaintiff Is Entitled To Reasonable Attorneys' Fees and Costs

Plaintiff is the prevailing party in this case—the jury returned a verdict in his favor. As the prevailing party, plaintiff may receive "a reasonable attorney's fee, including litigation expenses, and costs" at the court's discretion. 42. U.S.C. § 12205. He seeks $186,340 in attorneys' fees; $7,851.16 in costs, as well as pre-judgment interest.

Defendants do not contest the reasonableness of plaintiff's costs. Plaintiff's costs were $7,851.16. Defendants also do not object to the number of hours claimed by plaintiff's counsel.

Defendants do object to: (1) the hourly rates claimed by plaintiff's counsel, specifically Katherine Myers, Sarah Liesen, and Alexander Edelman; (2) fees plaintiff claims for a law firm and attorney who worked as a focus group moderator and trial consultant; and (3) prejudgment interest on the back-pay award.

Plaintiff seeks prejudgment interest. The court has discretion to award prejudgment interest on plaintiff's backpay award. *See Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1277 (D. Kan. 2016) (quoting *Gonzalez v. Sandoval Cnty.*, 2 F. Supp. 2d 1442, 1446 (D.N.M. 1998) (citing *Daniel v. Loveridge*, 32 F.3d 1472, 1478 (10th Cir. 1994))). The Supreme Court has noted that prejudgment interest is "an element of complete compensation"—a way "to make persons whole for injuries suffered through past discrimination." *Loeffler v. Frank*, 486 U.S. 549, 558 (1988) (quoting *West Virginia v. United States*, 479 U.S. 305, 310 (1987)).

The parties' arguments on this matter are conclusory. Defendants argue that although the court has discretion to award prejudgment interest, it should not, because no one knows how the jury decided to award $9,571 in back pay. Specifically, defendants presented evidence at trial that plaintiff was fired or quit higher-paying jobs after defendants fired him on January 8, 2015.

The court in its discretion finds that plaintiff is not entitled to prejudgment interest on the backpay award because he has not provided the court any method to determine a prejudgment interest award. Even after defendant opposed plaintiff's motion for prejudgment interest and argued that there is no way to know why the jury arrived at $9,571 in damages for back pay, plaintiff did not suggest how prejudgment interest should be calculated, what rate of interest should be applied, or how the jury could have arrived at the amount of damages it awarded.

Courts in this district have applied different rates of interest in calculating prejudgment interest. The rate ranges from less than one to ten percent, compounded annually. *See Mathiason*, 187 F. Supp. 3d at 1277–78 (discussing cases applying either the Internal Revenue Service interest rate or the Kansas

statutory rate of ten percent on prejudgment interest awards); *Umholtz v. Kan. Dep't of Social & Rehab. Servs.*, No. 11-4018-JAR, 2013 WL 5797600, at *1 (D. Kan. Oct. 28, 2013) (applying the Kansas statutory rate, but discussing a case from this district where that rate was halved); *Welch v. UNUM Life Ins. Co. of Am.*, No. 00-1439-DWB, 2008 WL 3876319, at *1 (D. Kan. Aug. 18, 2008) (applying the Kansas statutory rate where the rate of prejudgment interest was not opposed). Plaintiff does not suggest which rate this court should apply, or what method the court should use to calculate interest on plaintiff's backpay award.

There was testimony at trial that plaintiff earned $16 per hour working for defendants, and that after his employment was terminated on January 8, 2015, he had multiple higher-paying jobs. The first higher-paying job starting in March 2015, around two months after defendants terminated his employment. But if the jury decided to award plaintiff two months' wages, the award would have been around half of the $9,571 awarded. It is not evident to the court from plaintiff's conclusory briefing or from the record, how the jury arrived at its $9,571 award.

The court will not award prejudgment interest without even a proposed method for calculating what reasonable prejudgment interest should be. Therefore, the motion for prejudgment interest is denied.

### Reasonable Hours

To determine reasonable attorneys' fees using the lodestar method, plaintiff first bears the burden of showing that the number of hours claimed is reasonable. Generally, attorneys "do not bill all hours expended in litigation to a client, and an applicant should exercise billing judgment" when claiming the number of hours worked. *Mathiason*, 187 F. Supp. 3d at 1280 (quoting *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1202 (10th Cir. 1998)). This requires plaintiff's counsel to "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary and the court

has a corresponding obligation to exclude hours not reasonably expended from the calculation." *Id.* at 1280–81.

Plaintiff attached exhibits detailing the hours billed. These exhibits show that plaintiff has exercised billing judgment by choosing to reduce or not claim hours for various tasks in preparation for and during trial. The billing statement from plaintiff's counsels' firm (Doc. 97-7) shows that the firm billed over 600 hours in three years litigating this case from meetings with plaintiff through trial and post-trial motions. As mentioned above, defendants do not object to the number of hours billed by plaintiff. The court has reviewed the exhibits and briefing submitted, and finds that plaintiff's claimed hours are reasonable considering the nature of the case.

*Hourly Rates*

Plaintiff again bears the burden of establishing the reasonableness of the rates he requests. This is done by "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Plaintiff seeks hourly rates between $300 and $400 for the attorneys who worked on this case, and between $65 and $150 for staff.

Defendants object to the rates claimed for Ms. Myers, Ms. Liesen, and Mr. Edelman because they have been practicing only around six years. Defendants also request that the court reduce fees claimed for Mr. McKee's services as a trial consultant and for facilitating focus groups as part of plaintiff's trial preparation, and to deduct any time claimed for Mr. McKee's presence at trial.

Plaintiff's counsels' affidavits state that these are counsels' standard hourly rates. Plaintiff included an affidavit from an experienced employment lawyer, and cited case law from this district, and local legal publications to support his argument that the billing rates requested are reasonable.

Plaintiff's counsel specialize in employment law, practicing almost exclusively in the area. They compensate for any relative lack of experience in years with the amount of litigation, and especially trial experience, they have accumulated over the past six years. Experience cannot be determined based on years of practice alone. To the contrary, the court finds that actual litigation and trial experience is a much better measure. Many lawyers who have been practicing for longer than plaintiff's counsel have not had the opportunity to litigate and try as many cases as plaintiff's counsel. The court presided over the jury trial in this case, at which plaintiff's counsels' presentation resulted in a plaintiff's verdict. Counsel was effective and exhibited skill in the courtroom. The court finds that the hourly rates claimed by plaintiff's counsel are reasonable.

Regarding Mr. McKee's claimed fees, the parties agree that this circuit has not addressed whether mock trial or focus group costs are compensable. The parties agree that nationally courts are split on the issue, but that the facts of each case significantly impact the outcome. For example, courts might consider the experience of counsel, the infrequency that cases are tried to juries and the need for attorneys to practice outside of court, the potential benefit of more efficient and effective proceedings following such preparations, and the hours and cost expended compared to the needs of the case. Having considered these factors, the court finds the costs associated with Mr. McKee's fees are reasonable, including his time in court.

*Johnson Factors*

Once the court calculates the appropriate lodestar figure, it considers whether an adjustment is appropriate by considering the factors set out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714

(5th Cir. 1974). But the lodestar is presumed to be an appropriate fee and adjustments are the exception to that rule. *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1103 (10th Cir. 2010).

The *Johnson* factors include:

(1) The time and labor required . . .
(2) The novelty and difficulty of the questions . . .
(3) The skill requisite to perform the legal service properly . . .
(4) The preclusion of other employment by the attorney due to acceptance of the case . . .
(5) The customary fee . . .
(6) Whether the fee is fixed or contingent . . .
(7) Time limitations imposed by the client or the circumstances . . .
(8) The amount involved and the results obtained . . .
(9) The experience, reputation, and ability of the attorneys . . .
(10) The undesirability of the case . . .
(11) The nature and length of the professional relationship with the client . . . [and]
(12) Awards in similar cases.

*Johnson*, 488 F.2d at 717–719.

The court's discussion in calculating the lodestar already considered many of these factors. The court found the time and labor that plaintiff's counsel spent on this case to be reasonable. Although the case was not one of first impression, counsel did report that significant time was spent researching jury instructions as there are no pattern instructions for civil cases in the Tenth Circuit and many pattern instructions have not been updated since the ADA was amended. Counsel demonstrated the skill necessary to obtain a desirable result for plaintiff. Plaintiff's counsels' firm is a three-attorney firm that specializes, in part, in employment. The firm would have dedicated a substantial amount of its resources both in hours and finances on this case. The court considered and determined that the fee in this case is customary for employment cases in this area. The fee was contingent on plaintiff obtaining a favorable result. The experience and ability of counsel was discussed above, and the court finds that this factor also weighs in plaintiff's favor.

Based on all *Johnson* factors relevant to this case, no adjustment to the lodestar is warranted. Plaintiff is awarded reasonable attorneys' fees in the amount of $186,340.

**IT IS THEREFORE ORDERED** that plaintiff's Motion to Alter Judgment for Attorney's Fees, Costs, and Prejudgment Interest (Doc. 96) is granted in part and denied in part. Plaintiff is awarded $186,340 in attorneys' fees and $7,851.16 in costs. Plaintiff's motion is denied with regard to prejudgment interest.

**IT IS FURTHER ORDERED** that defendants' Motion for Judgment As a Matter of Law Pursuant to Rule 50(b) (Doc. 99) is denied.

Dated March 28, 2019, at Kansas City, Kansas.


s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**